JAMES AND THELMA PERILLO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 958–77.    Filed April 1, 1982.

*Patrick F. Broderick,* for the petitioners.
*Richard A. Mandel,* for the respondent.

NIMS, *Judge*: This case is before us on petitioners' motion "for dismissal and preclusion of evidence." We also have before us a motion by a prospective witness to quash a subpoena which would compel his attendance and testimony before this Court in a preliminary hearing.

These motions arise from petitioners' attack on the validity of a Federal court order authorizing a wiretap. Petitioners contend that the Attorney General did not authorize the wiretap application as required by 18 U.S.C. sec. 2516(1)(1970). Petitioners also make several other challenges concerning the validity of the wiretap order.

### FINDINGS OF FACT

Petitioners resided in Brooklyn, N.Y., at the time the petition in this case was filed.

In 1971, petitioner James Perillo (hereafter petitioner) and other persons were under investigation by Federal agents for illegal gambling activities in Brooklyn, N.Y. The agents sought a wiretap on the telephone which was utilized in the gambling operation.

During 1971, John N. Mitchell was Attorney General of the United States. On December 3, 1971, the Office of the Attorney

General issued the following memorandum (hereafter the December 3, 1971, memorandum):

UNITED STATES GOVERNMENT      DEPARTMENT OF JUSTICE
MEMORANDUM

TO      : Henry E. Petersen      DATE: DEC 3 1971
      Acting Assistant Attorney General
      Criminal Division      JNM:GAA:skh
FROM      : John N. Mitchell
      Attorney General
SUBJECT: Interception Order Authorization

This is with regard to your recommendation that authorization be given to James O. Druker of the Criminal Division to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephone number 212–633–9160, located at the 3rd floor rear apartment at 1157 38th Street, Brooklyn, New York, in connection with the investigation into possible violations of Title 18, United States Code, Sections 1955 and 371 by James Perillo, Hugo Bassi, an individual known only as "Mac", an individual known only as "Irving", an individual known only as "Red" and others as yet unknown.

Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing James O. Druker to make the above-described application.

The initials "JNM" were handwritten over the name "John N. Mitchell."

When he viewed a copy of the December 3, 1971, memorandum at the hearing on this matter, former Attorney General Mitchell could not remember whether he had personally placed the handwritten initials on the memo. The former Attorney General was also unable to positively identify the initials as his own writing. He stated, however, that "they are similar to the initials that I used in such matters."

Early in John Mitchell's tenure as Attorney General, his executive assistant, Sol Lindenbaum, placed the initials "JNM" on some of the memoranda authorizing wiretap applications. This practice ceased in November 1971. Since November 20, 1971, the Attorney General personally authorized all applications for wiretap orders.

Based upon his familiarity with and recollection of John Mitchell's signature, Sol Lindenbaum identified the initials placed on the December 3, 1971, memorandum as John Mitchell's handwriting.

During all relevant periods, the Office of the Attorney General maintained a correspondence record. This record noted the arrival, departure, and action taken on all correspondence entering or leaving the Attorney General's Office. The correspondence record indicates that the following events occurred concerning the Perillo wiretap application:

(1) On November 26, 1971, the Office of the Attorney General received from the Director of the FBI a memorandum requesting authorization to apply for a wiretap with regard to James Perillo and others.

(2) This request was forwarded from the Attorney General's Office to Harold Shapiro of the Criminal Division, Department of Justice, on November 26, 1971, for a preliminary review, prior to consideration within the Attorney General's Office.

(3) On December 3, 1971, the Criminal Division returned the Perillo wiretap request to the Office of the Attorney General and indicated a recommendation to the Attorney General that the request be approved.

(4) On December 3, 1971, the Perillo wiretap request was reviewed by Sol Lindenbaum, who concurred in the decision to recommend approval.

(5) On December 3, 1971, the Perillo wiretap request was forwarded from Mr. Lindenbaum to Mr. Mitchell for Mr. Mitchell's approval or disapproval of the request.

(6) On December 3, 1971, Mr. Mitchell personally reviewed, approved, and authorized the request to seek a wiretap order in the matter related to James Perillo and others.

On December 6, 1971, the Federal District Court for the Eastern District of New York authorized, by court order, the Perillo wiretap. The tap was implemented and evidence of illegal gambling activity was secured.

Petitioner later pleaded guilty on Federal gambling charges. He was sentenced to 5 years' probation and a $20,000 fine. Petitioner did not question the validity of the wiretap order in the Federal criminal case.

Respondent seeks to use information obtained in the criminal investigation in this civil tax case to show that petitioner failed to report all of his income in 1969 and 1970. Petitioner now challenges the validity of the wiretap order.

## OPINION

Petitioner contends that the Attorney General did not authorize the Perillo wiretap application as required by 18 U.S.C. sec. 2516(1)(1970). The pertinent part of the legislation controlling wiretaps states:

The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of—[List of Federal crimes omitted.] [18 U.S.C. sec. 2516(1) (1970).]

If the application was not properly authorized, then the wiretap legislation requires suppression of the wiretap evidence and its fruits in this case. The statutory exclusionary rule states:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter. [18 U.S.C. sec. 2515 (1970).]

The provisions concerning authorizations of wiretap applications are strictly construed to require personal approval by an official designated by the statute. In *United States v. Giordano*, 416 U.S. 505 (1974), the Supreme Court emphasized that "the provision for pre-application approval was intended to play a central role in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored." 416 U.S. at 528.

In the case currently before us, the parties concede that no Assistant Attorney General had been specially designated to authorize the wiretap application. The parties also concede that the December 3, 1971, memorandum constitutes adequate authorization for the Perillo wiretap application if Attorney General Mitchell personally approved and initialed it. See *United States v. Chavez*, 416 U.S. 562 (1974).

The issue for our decision, therefore, is a question of fact: did

the Attorney General personally authorize the Perillo wiretap application? Based on a careful consideration of the evidence introduced at the evidentiary hearing, we conclude that the application was properly authorized.[1]

Petitioners showed that a history of improper authorizations of wiretap applications existed during John Mitchell's tenure as Attorney General. See *United States v. Giordano, supra; United States v. Chavez, supra.* Former Attorney General Mitchell testified that he did not remember personally authorizing the Perillo wiretap application and he could not positively identify the handwritten initials on the December 3, 1971, memorandum as his own handwriting. This evidence, standing alone, indicates a possibility that the Perillo wiretap application may not have been personally authorized by the Attorney General.

Other evidence, however, convinces us that the application was properly authorized. The practice of improper authorization was stopped before the Perillo wiretap application process was commenced. Mr. Mitchell adopted in his testimony before this Court an affidavit published in *United States v. King,* 478 F.2d 494, 500–501 (9th Cir. 1973). In that affidavit, the former Attorney General stated: "Since November 20, 1971, I have personally authorized all applications for interception orders which have been presented to Federal judges pursuant to 18 U.S.C. 2516(1)." 478 F.2d at 501. Sol Lindenbaum, executive assistant to the Attorney General during 1971, corroborated Mr. Mitchell's testimony. Mr. Lindenbaum testified that procedures within the Attorney General's Office were changed in November 1971, so that the Attorney General would personally authorize each wiretap application. No evidence suggests that wiretap applications were improperly authorized after November 20, 1971.

Additional evidence suggests that the Attorney General

---

[1] We reach this decision without having to decide which party has the burden of proof on this issue. Generally, the moving party has the initial burden of production in suppression hearings concerning the propriety of authorizations of wiretap applications. In some cases, the burden of persuasion may shift to the Government after the movant's production burden has been met. *United States v. De La Fuente,* 548 F.2d 528 (5th Cir. 1977). Due to the nature of the evidence in this case, however, we are convinced that the application was properly authorized regardless of which party had the burden of proof. Therefore, we will not discuss how much evidence is required to satisfy movant's burden of production and we will not decide whether petitioner has met this burden.

personally authorized the Perillo wiretap application. Mr. Lindenbaum testified that, based on his personal experience as Mr. Mitchell's assistant, it was his opinion that the handwritten initials on the December 3, 1971, memorandum were Mr. Mitchell's handwriting. Also, Mr. Mitchell testified that although he could not positively identify the initials as his own, "they are similar to the initials that I used in such matters."

Petitioners argue that without the original of the December 3, 1971, memorandum it was impossible to successfully challenge that the initials were not those of Mr. Mitchell. Petitioners ask this Court to grant their motion unless the respondent authenticates the initials. However, in *United States v. Iannelli*, 528 F.2d 1290 (3d Cir. 1976), a case of which petitioner's counsel professed knowledge, a handwriting expert analyzed a copy of a memorandum similar to the December 3, 1971, memorandum, and concluded that the initials were *not* written by Mr. Mitchell. In these circumstances, where petitioners did not indicate why they could not perform an examination similar to the one in *Iannelli*, we find their argument concerning the absence of the original December 3, 1971, memorandum to be meritless.

Also, Mr. Lindenbaum identified and explained a correspondence record maintained by his secretary in the Office of the Attorney General. This record indicates that Mr. Mitchell personally authorized the Perillo wiretap application. No evidence suggests that the record was inaccurate or was not a contemporaneous log.

We conclude that former Attorney General Mitchell personally authorized the Perillo wiretap application as required by 18 U.S.C. sec. 2516(1) (1970). Petitioners did little more than make bare allegations of impropriety in the authorization process. They did nothing to rebut testimony which convincingly establishes that the Attorney General properly authorized the wiretap application. As stated, petitioners ask that respondent be required to authenticate the initials "JNM" on the December 3, 1971, memorandum. Given the convincing nature of the other evidence before us, we think that this exercise is unnecessary. See *Nardone v. United States*, 308 U.S. 338 (1939); *United States v. De La Fuente*, 548 F.2d 528 (5th Cir. 1977). Therefore, we hold that the statutory requirements

were satisfied and that the exclusionary rule should not be applied in this situation.

Petitioners made several other arguments concerning the validity of the wiretap order to support their motion for suppressing evidence. Petitioners alleged that Agent Frey of the Federal Bureau of Investigation gave material. false information in the affidavit which supported the Federal District Court's order authorizing the Perillo wiretap. Petitioners subpoenaed Agent Frey to testify at a preliminary hearing concerning the validity of the wiretap order. Agent Frey moved to quash the subpoena.

The only basis offered by petitioners as support for their allegation that the Frey affidavit contained material false information is contained in the book "Brick Agent" by former New York FBI Agent Anthony Villano. Villano states that he at one time manufactured false informant information during an internal FBI investigation. A. Villano, Brick Agent 199–202 (1977). He also states that FBI agents often lie and burgle to obtain information. A. Villano, *supra* at 200–201, 222–228. However, he also states that "I never 'flaked' anyone—planted evidence on a suspect—nor did I ever lie in testimony in court." A. Villano, *supra* at 200. Also, he never indicates that it was a common practice for FBI agents in the New York area to make false affidavits supporting wiretap applications, nor does he refer to Agent Frey as one of the agents who participated in illegal activities.

The inference from this book that Agent Frey may have given false information in the affidavit supporting the Perillo wiretap order thus is of very slight, if any, probative value. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a party must make a substantial preliminary showing of a knowing or reckless false statement supporting a search warrant before a preliminary hearing concerning the veracity of the affidavit must be held. This standard also applies to wiretap orders. *United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979). Petitioners' evidence, which is based solely on the Villano book, fails to make the substantial preliminary showing required by *Franks*. Accordingly, no preliminary hearing as to the veracity of the affidavit must be held.

Petitioners' other arguments concern alleged instances in which the Federal District Court order authorizing the Perillo

wiretap failed to satisfy the statutory requirements of 18 U.S.C. secs. 2510–2520 (1970), including: failure to spell out (1) a requisite Federal crime; (2) the need for a wiretap; (3) probable cause to believe that particular communications concerning the Federal offense would be obtained through the interception; (4) probable cause to believe that the telephone from which the communications would be intercepted was used in connection with committing the Federal offense; (5) contact with interstate commerce; (6) indentification of five persons involved in committing the Federal offense. The Court order facially satisfies each of the statutory requirements. Because petitioners fail to present sufficiently detailed and nonconjectural challenges to enable this Court to conclude that additional contested issues of fact exist regarding the validity of the wiretap order, we hold that these additional arguments are meritless and determine that it is unnecessary to hold further evidentiary hearings concerning the validity of the wiretap order.[2]

Petitioners' motion is denied. Because no further preliminary hearings will be held concerning the admissibility of evidence, the motion to quash the Frey subpoena is granted.

*Appropriate orders will be entered.*

---

[2]We note that petitioners included arguments entitled "bank accounts" and "exchange items" in their motion for dismissal and preclusion of evidence. These arguments properly concern the substantive issues in this case rather than the issue raised in this motion concerning the suppression of evidence. These matters, therefore, should be presented again by petitioners when this case is called from the general docket.