**Lori J. ANTHONY, Plaintiff,**

v.

**Harry M. ANTHONY; MCM Consulting & Management, LLC; Countrywide Home Loans, Inc.; Countrywide Bank, FSB; Shellie Robertson; and Tonya Friend, Defendants.**

**No. 08–21520–CIV.**

United States District Court, S.D. Florida, Miami Division.

July 27, 2009.

William P. Heller, Jeffrey Trinz, Kimberly A. Leary, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, for Defendants.

David P. Herman, Rollin Montclair Smith, Murray Morin & Herman, Coral Gables, FL, for Plaintiff

## *ORDER GRANTING SUMMARY JUDGMENT*

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Partial Summary Judgment **(D.E. No. 35)** and the Countrywide Defendants' Motion for Summary Judgment **(D.E. No. 51)**. For the reasons set forth below, Plaintiff's Motion

for Partial Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

## I. Procedural History and Preliminary Matters

Plaintiff brought the above-captioned action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida on April 30, 2008, asserting claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and Florida's Deceptive and Unfair Trade Practices Act against Corporate Defendants MCM Consulting & Management, LLC ("MCM"), Countrywide Homeloans, Inc., and Countrywide Bank, FSB (collectively "Countrywide" or "Countrywide Defendants"), and against individual Defendants Harry M. Anthony, Shellie Robertson, and Tonya Friend (D.E. No. 1, Exh. B). In addition, Plaintiff asserted claims for fraud in the inducement and conversion against Defendants Harry M. Anthony and MCM. She also asserted a claim for fraudulent notarization against Defendant Tonya Friend. On May 28, 2008, the Countrywide Defendants removed this action to federal court on federal question grounds (D.E. No. 1). Default judgment was granted against MCM and Harry M. Anthony on November 21, 2008 (D.E. No. 38). The Court granted Plaintiff an extension of 120 days to serve individual Defendants Shellie Robertson and Tonya Friend. That deadline has passed and, to date, Plaintiff has not filed proof of service, despite deposing Tonya Friend.

Additionally, Plaintiff has brought a motion to strike the affidavit of Lanisa Jenkins, a loss recovery manager in the Countrywide's Risk Management Department (**D.E. No. 60**). Jenkins testified re-garding the loan documents at issue in this case. Plaintiff asserts that because Jenkins was admittedly not present at the signing of these documents, which Plaintiff asserts are forgeries, her testimony should be stricken for lack of personal knowledge. Jenkins's affidavit, however, provides an evidentiary foundation for admitting the loan documents as business records pursuant to Federal Rule of Evidence 803(6). The authority cited by Plaintiff, *United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979), dealt with a trial judge's authority to exclude an expert witness's opinion when the expert's qualifications are seriously challenged and does not, in fact, support striking Jenkins's affidavit in this case. Accordingly, Plaintiff's motion to strike (D.E. No. 60) is denied.

## II. Factual Background

During the time period at issue in this case, Plaintiff owned a home at 2601 Sea Island Dr., Fort Lauderdale, FL, 33301 ("the property" or "Plaintiff's home"), which was subject to a $2,000,000 first mortgage by Fifth Third Mortgage Co. and a $193,000 second mortgage for a home equity credit line with National City Bank (Pl. Aff.¶ 2, D.E. No. 35–2). Plaintiff paid a $10,000 monthly interest-only mortgage payment on the first mortgage. *Id.* In April 2007, Harry Anthony [1], a Defendant in this case, contacted Plaintiff about refinancing the loan on her home (Pl. Aff.¶ 3, D.E. No. 35–2). Plaintiff testified that he told her that she could take advantage of a very low rate that had come available, which would cause her monthly interest-only payments to fall to $6,902.40 per month and would not increase the $2,000,000 loan principal. *Id.* Plaintiff testified that Mr. Anthony also told her he

---

1. The evidence suggests that Defendant Harry Anthony was Plaintiff's cousin. *See* (Friend Dep. at 103–4, D.E. No. 92–2).

could refinance the home equity mortgage to offer her an interest rate of approximately 3% instead of the 8.5% interest rate she was paying with National City Bank. *Id.* at ¶ 4. Plaintiff agreed to these terms. *Id.* at ¶¶ 3–4.

A promissory note˙ and mortgage were executed on May 4, 2007 in the amount of $2,000,000 and bear signatures purported to be those of Plaintiff and her husband, Tonino Catalucci (Jenkins Aff. ¶ 2, D.E. No. 51). A home equity line of credit was also allegedly provided on May 4, 2007 in the amount of $212,000 and also bears a signature purported to be that of Plaintiff. *Id.* at ¶ 3. Countrywide's file contains a TILA Disclosure Statement and Notice of Right to Cancel for the mortgages that bear signatures purported to be Plaintiff's. *Id.* at ¶ 6. Lanisa Jenkins, a loss recovery manager for Countrywide, testified to the authenticity of these documents as business records maintained in accordance with Countrywide's regular course of business.

Plaintiff testified that a week after agreeing with Defendant Anthony that she would refinance her first and second mortgages, she received a letter from a closing agent dated May 8, 2007 (Plaintiff Aff. ¶ 5, D.E. No. 35–2). Plaintiff testified that the letter enclosed the documents associated with the refinancing, some of which are discussed above, and indicated that the refinancing had been consummated. *Id.* Plaintiff asserts, however, that these documents are forgeries, and she never signed

them. *Id.* She specifically asserts that she signed neither the mortgages, nor the notes, nor the TILA disclosure statements. *Id.* She testified that her signatures on those documents are forgeries. *Id.* at ¶¶ 5, 7, 8. She further testified that she never received any documents reflecting the terms of the loan agreement which she discussed with Defendant Anthony and to which she agreed. *Id.* at ¶ 9.

Tonya Friend, a notary, testified that she was present for the execution of some refinancing documents with Plaintiff (Friend Dep. at 34, D.E. No. 92–2). She testified that the documents in evidence in this case, however, are not the documents that she notarized. *Id.* at 52–54, 62. She testified that it is her notary stamp[2] on the allegedly forged documents, but the "Tonya Friend" notary signature is not hers. *Id.* at 52–53, 62, 65–66, 68. Ms. Friend testified that she did not in fact notarize the documents now in evidence, and she did not in fact witness the closing they memorialize. *Id.* at 62–64. She also testified that, although she has met the Plaintiff, she never met Plaintiff's husband, whose signature is also on some of the allegedly forged documents. *Id.* at 55. Ms. Friend testified that she believed the "Borrower" signature on the documents to be that of Shellie Robertson, an assistant to Defendant Anderson.[3] *Id.* at 22, 54, 63, 68–69.

Plaintiff testified that, upon receiving the alleged forgeries, she contacted Defendant Anthony to voice her concerns (Pl.

---

**2.** Ms. Friend testified that, although it is her stamp on those documents, the stamp reads "Monroeville Borough of Allegheny County" (Friend Dep. at 65, D.E. No. 92–2). As of mid-September 2006, Ms. Friend left her employment in Monroeville and got a new stamp for her new location in Blackridge. *Id.* at 66. Therefore, although the stamp used on the documents at issue was not expired, it was not the stamp Ms. Friend was using in May

2007, when the documents at issue are dated. *Id.* at 65–66.

**3.** Ms. Jenkins testified that Countrywide has never employed an individual named Shellie Robertson (Jenkins Aff. ¶ 11, D.E. No. 51). Ms. Friend's testimony was that Mr. Anderson, a mortgage broker, was not himself a Countrywide employee at the time in question, but instead worked for Defendant MCM (Friend. Dep. at 37, D.E. No. 92–2).

Aff.¶ 3, D.E. No. 59–2). She testified that he responded that he would rectify the situation. *Id.* Plaintiff's first invoice from Countrywide indicated that she owed $6,902.40 for her first payment, which was the amount Defendant Anthony had represented she would owe. *Id.* at ¶ 4. Plaintiff continued making monthly payments of $7,000 to Countrywide until the loans were discharged in April 2008. *Id.;* (Jenkins Aff. ¶ 9, D.E. No. 51–2).

Plaintiff testified that she learned that Defendant Anthony had arranged to have the Countrywide invoices for her property sent to him, in order to conceal his fraudulent actions. *Id.* at ¶ 5. Once she received the invoices, Plaintiff noticed that the principal balance was increasing. *Id.* at ¶ 6. She stated that she contacted Defendant Anthony, who stopped returning her calls. *Id.* She testified that because the principal on her loan was increasing, she sought to sell her home, and she continued to make payments on the mortgages in order to avoid jeopardizing the sale. *Id.* at ¶ 7. Countrywide records show that Plaintiff did not inform Countrywide of the forgery until March 24, 2008, when her request for a waiver of the prepayment penalty on the refinance loan was denied (Jenkins Aff. ¶ 10, D.E. No. 51–2). The loans are now discharged. *Id.* at ¶ 9.

### III. *Legal Standard*

██ A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Electric Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. It is "material" if it might affect the outcome of the case under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

██ If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties,* 941 F.2d 1428, 1438 (11th Cir.1991). The moving party "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties,* 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991)). *See also* Fed.R.Civ.P. 56(e).

██ In contrast, if the non-moving party bears the burden of proof at trial,

the moving party may obtain summary judgment simply by establishing the non-existence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. 2548 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. 2548. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed.R.Civ.P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### IV. Analysis

#### A. TILA claim

In this case, the evidence that the loan documents dated May 4, 2007 are forgeries is undisputed. It is also undisputed that Plaintiff was not present at a closing on May 4, 2007 and did not execute those forged documents. Plaintiff did not even see the documents until after the date of their ostensible execution. The question before this Court is whether Plaintiff can recover under TILA for Countrywide's failure to make mandated disclosures prior to the fraudulent execution of forged loan documents.

"It is the purpose of [TILA] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). As a remedial statute, TILA must be construed liberally in favor of the consumer. *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir.1998). TILA requires creditors to make certain disclosures, such as the amount financed, the amount of the finance charge, the annual percentage rate, and any prepayment penalties. 15 U.S.C. § 1638. Regulation Z, which was promulgated to implement TILA, provides guidelines for creditors to follow when making disclosures. 12 C.F.R. §§ 226.17, 226.18. In the case of a residential mortgage transaction, good faith estimates of these disclosures must be made before extending credit and any inaccuracies must be corrected at the time of consummation. 15 U.S.C. § 1638(b). Consummation is defined in Regulation Z as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). The Court must evaluate TILA transactions from the consumer's viewpoint. *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir.2004) (citing *Cody v. Cmty. Loan Corp. of Richmond County*, 606 F.2d 499, 505 (5th Cir. 1979)).

The question before this Court is whether, in the event of a forgery, a creditor can be liable for failure to make TILA disclosures to the person whose name was forged. The Eleventh Circuit has not directly addressed this issue. Case law from other circuits is divided. In *Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475 (5th Cir.1995), the plaintiff found a car in defendant's dealership that she wanted to

purchase and filled out a credit application form. *Id.* at 477. When she returned to see the financing contract for the purchase of the car, the general manager told her that the contract had been executed. *Id.* at 478. When Plaintiff protested that she had never signed the contract, she was shown a contract on which her name was forged. *Id.* The interest rate was higher than the one she had discussed with the salesman. *Id.* The plaintiff nonetheless made all the payments for the car. *Id.* The Fifth Circuit applied Mississippi contract law on the sale of goods and found that the contract had been consummated for TILA purposes, giving rise to liability for failure to make the requisite disclosures. *Id.* at 480–81. The Fifth Circuit did not rule that all forgeries would give rise to liability under TILA, however. *Id.* Instead, the Fifth Circuit found that, despite the forged signature, the parties' conduct gave rise to a consummated contract for the sale of goods under Mississippi law. *Id.*

In a Nebraska case factually similar to this one, the plaintiff's son forged her name on a credit application and contract to purchase a new car. *Carter v. Atchley Ford, Inc.,* No. 8:01CV151, 2002 WL 802682, at *1 (D.Neb.2002). The defendant made the required TILA disclosures, but those disclosures never reached the plaintiff, who was unaware of the transaction. *Id.* at *3. The contract was rescinded after an investigation revealed the fraud. *Id.* at *1. The district court found that because TILA was intended to protect consumers and the defendant treated the plaintiff as an obligor under the contract until an investigation proved otherwise, defendant was liable to plaintiff. *Id.* at *3–*4.

 Other circuits have, however, ruled that TILA liability cannot arise from forgeries. In *Jensen v. Ray Kim Ford, Inc.,* 920 F.2d 3 (7th Cir.1990), the plaintiffs purchased a new car and later discov-

ered, due to a discrepancy in the monthly payments, that the contract was not the one they signed and was a forgery. *Id.* at 4. The Seventh Circuit noted that a forged contract is a nullity, and the plaintiffs were not obligated under it. *Id.* Because TILA requires disclosures only "to the person who is obligated," the Seventh Circuit concluded that TILA did not provide a remedy for the forgery. *Id.* (citing 15 U.S.C. § 1631); *see also MacDermid v. Discover Financial Services,* 488 F.3d 721 (6th Cir. 2007) (holding that a wife's fraudulent conduct in obtaining a credit card in both her and her husband's name did not render the creditor liable for failing to send the husband the required disclosures).

 This Court finds the reasoning of the Seventh Circuit persuasive. Disclosures under TILA must be made before a contract is consummated, and consummation occurs when "a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). There is no evidence before the Court, in law or fact, that a time ever came when Plaintiff was contractually obligated under the forged mortgages at issue here. *See State v. Family Bank of Hallandale,* 623 So.2d 474, 479 (Fla.1993) ("Mutual assent is an absolute condition precedent to the formation of a contract. Absent mutual assent, neither the contract nor any of its provisions come into existence."). Plaintiff herself testified that she paid the loans because she did not want to delay the sale of her home, not because she considered herself obligated under them. The Court acknowledges that Plaintiff should have a remedy for the forgery of the contracts at issue. That remedy, however, is not provided in TILA.

**B. State law claims**

 It is within this Court's discretion to exercise supplemental jurisdiction

over pendent state claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir.2004). However, the United States Supreme Court has stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The United States Supreme Court has since explained that this statement in *Gibbs* is not a mandatory rule, but rather

> [t]he statement simply recognizes that in the usual case in which all federal-law claims are are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Having considered these factors, this Court finds that the balance of the factors weighs in favor of the Court declining to exercise jurisdiction over the state law claims.

This case was removed from state court. Accordingly, the Court will remand the remaining state law claims back to the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. Plaintiff's Motion to Strike (**D.E. No. 60**) is **DENIED.**

2. Plaintiff's Motion for Partial Summary Judgment (**D.E. No. 35**) is **DENIED.**

3. Defendant's Motion for Summary Judgment (**D.E. No. 51**) is **GRANTED.** A final judgment will be entered by separate order.

4. Plaintiff's remaining state law claims are **REMANDED** back to the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida.

5. This case is **CLOSED,** and all pending motions are **DENIED AS MOOT.**