**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Terry Lee HARRIS, Defendant-Appellant.**

**No. 80–1727.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 14, 1981.

Decided Sept. 28, 1981.

Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo. (Charles E. Graves, U.S. Atty., Cheyenne, Wyo., and George Santini, Legal Intern, with him on the brief), for plaintiff-appellee.

James H. Barrett of Trierweiler, Bayless, Barrett & McCartney, Cheyenne, Wyo., for defendant-appellant.

Before SETH, Chief Judge, McWIL-LIAMS, Circuit Judge, and TEMPLAR,* District Judge.

McWILLIAMS, Circuit Judge.

Terry Lee Harris was charged with the murder on or about February 23, 1980, of his eight-month old son, T'Mel J. Harris, at Francis E. Warren Air Force Base, in violation of 18 U.S.C. § 1111 (1976).[1] In a second count, Harris was charged with fracturing his son's left leg on or about November 5, 1979, at Francis E. Warren Air Force Base, in violation of 18 U.S.C. § 13 (1976),[2] and Wyo.Stat. § 6-4-504 (1977).[3] A jury convicted Harris on both counts. The conviction on the first count was for second degree murder, and, pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5010(c) (1976), Harris was sentenced on that count to an indefinite period of imprisonment which would continue until he was discharged by the Youth Corrections Division, Board of Parole, but which was not to exceed eight years. On the second count, Harris was committed to the custody of the Attorney General for a period of eighteen months, to be served concurrently with the sentence imposed on the first count. Harris appeals both convictions.

On appeal, the defendant urges the following: (1) Both convictions should be reversed because of the improper admission, over objection, of evidence relating to so-called "other injuries," sustained by the child, i.e., injuries other than those allegedly inflicted on or about November 5, 1979, and February 22, 1980, the two dates alleged in the information; and (2) The conviction on the second count should be reversed because the evidence is insufficient to show that Harris caused any injury to his child on or about November 5, 1979.

The Government's theory of the case was that this was an aggravated case of child abuse which culminated, on or about February 23, 1980, with the death of the defendant's eight-month old son from head and abdominal injuries caused by blows from the defendant's fists. The defendant's theory of the case was that the injuries sustained by the infant son, T'Mel, on February 22, 1980, were the result of an accidental fall, and that any prior injuries sustained by the child were also the result of accident, and not child abuse on the part of the defendant.

The defendant was a member of the United States Air Force and was stationed at Francis E. Warren Air Force Base in Cheyenne, Wyoming. He lived on the base with his wife and her young son from a prior marriage. T'Mel was born on June 9, 1979. On February 22, 1980, the defendant brought T'Mel to the emergency room at the base hospital. The child had severe cranial and abdominal injuries which required immediate resuscitative and stabilizing measures. On the day Harris brought his son to the hospital, he stated to the hospital authorities that his son had fallen from his crib. The baby was thereafter transferred to a Cheyenne hospital, where he died on February 23, 1980. At that time Harris changed his initial explanation of how his son was injured and told the attending doctors that he was carrying the

---

* Honorable George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

1. 18 U.S.C. § 1111 provides for federal court jurisdiction over murders committed on United States Government property.

2. 18 U.S.C. § 13, also known as the Assimilative Crimes Act, makes the violation of state law a federal offense provided the crime in question is committed on land reserved to the federal Government, and the act or omission is not otherwise proscribed by federal law.

3. Wyo.Stat. § 6-4-504 proscribes child abuse of persons under sixteen years of age.

baby on his shoulders in the living room of his home when he tripped over a telephone cord, causing both the baby and himself to fall to the floor.

Full body X-rays were taken of the deceased child, and an autopsy was performed with the consent of the parents. These X-rays, together with the autopsy report, and the medical opinions based thereon, constitute the heart of the Government's case. The cause of death was determined to be severe brain and abdominal injuries with bleeding in the abdomen and free blood in the peritoneal cavity. Expert medical testimony indicated, *prima facie*, that these injuries could not have resulted from an accidental fall, but were the result of no less than six blows with a solid object, such as a fist, to the head and abdominal area.

The full body X-rays and autopsy revealed much more. In addition to the injuries above described, there was evidence of additional injuries consisting of fractures of the clavicle, the seventh and eighth left ribs posteriorly, the ninth and tenth right ribs posteriorly, the right wrist, the left tibia, and a possible fracture of the left arm. These fractures were all in the healing process, and the stage of the healing indicated that the injuries were caused on different occasions during the two or three months immediately preceding the infant's death on February 23, 1980. Expert medical witnesses testified that the series of injuries strongly suggested a pattern of child abuse.

The Government's evidence also established that on or about November 8, 1979, the defendant, and his wife, brought T'Mel to the base hospital, and said that something appeared to be wrong with T'Mel's left leg. As indicated, X-rays taken at that time, and again after death, revealed a fractured left tibia.

Medical experts testified that a baby's bones are in a formative stage, and are therefore quite pliable, and that a baby rarely breaks any bones in a fall. These experts also stated that the fractures sustained by T'Mel more probably came from external blows of considerable force.

Evidence showed that T'Mel's was a normal birth, and that there was no indication of any physical malfunction until he was brought to the base hospital in November, 1979, with the fractured left tibia. In order to negate the possibility that T'Mel's injuries were occasioned by some one other than the defendant, the Government introduced evidence concerning the degree of care and custody exercised by Harris over his child. Numerous baby sitters testified that the child suffered no accident or mishap when in their care. Personnel from the base care center testified to the same effect. Harris' wife testified as a defense witness and, in effect, denied that she ever abused her child. Her testimony was that the leg injury suffered in November, 1979, was the result of a car accident. And, of course, she was not at home on February 22, 1980, when T'Mel suffered the injury to his head and abdomen.

In addition, the Government offered evidence, which was later confirmed by the defendant when he testified in his own behalf, that the defendant suffered from recurring emotional problems which caused an impulse to assault and abuse others, particularly his children. In this regard, the evidence showed that on several occasions the defendant had gone to a base hospital facility, complaining about his urge to abuse his children.

As indicated, the defendant testified in his own behalf, and denied ever having struck T'Mel. His testimony concerning what happened on February 22, 1980, was consistent with his second statement to the hospital authorities, *i.e.*, he was carrying T'Mel on his shoulders when he tripped over a telephone cord which caused both of them to fall to the floor.

As above mentioned, the murder charge was based on events occurring on or about February 23, 1980, and in a second count Harris was charged with fracturing his son's left leg on or about November 5, 1979. The Government's evidence also showed other bone fractures sustained by the infant on different occasions in the two to three

months prior to his death, including fractures of the clavicle, four ribs, and the wrist. Defendant objected to the introduction of all evidence pertaining to T'Mel's "other injuries," *i.e.,* injuries other than those allegedly inflicted on or about February 23, 1980, and November 5, 1979. The district court overruled these objections, and instructed the jury that such evidence could only be considered in connection with the issue of intent, and "in relation to the absence of mistake or accident."

■ Counsel's first ground for objecting to the evidence of other injuries is that there was no evidence which indicated that it was the defendant who caused these other injuries. We do not agree with this analysis of the evidence. We concede that there was perhaps no *direct* evidence, *i.e.,* eye witness testimony or a confession by the defendant, which indicated that he had ever abused his child. But such does not end the matter. This is a case based, in the main, on circumstantial evidence, and, in our view, the facts and circumstances are such as to permit a jury to infer that it was the defendant who struck his child on these other occasions, as well as on November 5, 1979, and February 23, 1980.

At the outset we note that there is no challenge on appeal to the sufficiency of the evidence to support the jury's determination that Harris caused the death of his infant son on or about February 23, 1980, by beating him on the head and in the abdominal area with his fists. In this regard, the Government's evidence proved, *prima facie,* that T'Mel's fatal injuries were *not* sustained in any fall, and also established, *prima facie,* that such injuries *were* the result of a beating. T'Mel was admittedly in the sole care and custody of the defendant when he received the injuries which resulted in his death, and it was Harris who brought T'Mel to the hospital. So, the evidence, viewed in a light most favorable to the Government, clearly permits the inference that Harris did, in fact, assault his child on or about February 22, 1980, despite his denial and the fact that no one actually saw him strike his child. In

like manner, we believe the evidence also permits the inference that it was the defendant who struck his child on the occasion of his other injuries, including the fracture of his left tibia on or about November 5, 1979.

As concerns the other injuries sustained by T'Mel, the defendant obviously had the opportunity to assault his child on these other occasions. The evidence showed that he was with his child an ever increasing amount of time after his wife returned to work. As above mentioned, the Government offered evidence tending to negate the possibility that persons other than the defendant mistreated the child by calling a parade of baby sitters and personnel from the base child care center, who uniformly testified that the child had suffered no mishap while in their care. Any suggestion that it was possibly the mother who mistreated T'Mel is only that—a suggestion. Mrs. Harris testified in behalf of her husband, and, for example, attributed the injuries sustained on November 5, 1979, to an accident. Certainly, she did not admit to striking the child, and, of course, she knew nothing about what happened on February 22, 1980, since she was not at home when T'Mel sustained the head and abdominal injuries. So, by a process of elimination, Harris is the only person left in the picture. *Soap v. Carter,* 632 F.2d 872, 875 (10th Cir. 1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981).

Additional circumstantial evidence of an incriminating nature which links Harris to the series of beatings is the testimony relating to Harris' mental problems. The Government established as a part of its case-in-chief that during the summer and fall of 1979 Harris contacted his military superiors and base psychologists, complaining about his urge to harm his children. This line of testimony, which was corroborated by the defendant, tended to tie the defendant to the abuse of his child. Also, the conflicting stories which the defendant gave the hospital authorities concerning the injuries sustained by the child on or about February 22, 1980, is arguably some evi-

dence of a general conscienceness of guilt. In sum, we conclude that the totality of the evidence is such as to permit the inference that it was Harris, and not someone else, who inflicted all of the injuries on his child. In thus concluding, we reject the argument that the Government only tied Harris into the February 22, 1980, beating, and that evidence of other injuries sustained at other times should have been excluded on the ground that Harris was not responsible for such injuries.

■ Counsel also objects to the evidence of other injuries on the ground that such evidence was highly prejudicial in nature, and of relatively little probative value. Fed.R.Evid. 403. The district court, after careful consideration, rejected this argument, and upon review we find no abuse of discretion. The evidence of these other injuries may well have been prejudicial in nature. A battered child is not a pretty picture. But in our view the evidence of other injuries was highly probative in nature. A district court has discretion to strike a balance between the probative value and the prejudicial nature of evidence, and we find no abuse of that discretion here. *United States v. Lucero*, 601 F.2d 1147, 1149 (10th Cir. 1979).

■ Counsel's final argument is that there is insufficient evidence to sustain the defendant's conviction on count two of the information. In this regard, counsel argues that the Government failed to tie Harris to any beating on or around November 5, 1979, in which T'Mel suffered the fracture of his left tibia. For all of the reasons set forth above, we conclude that the evidence is sufficient to support a conviction on the child abuse charge contained in the second count of the information.

■ The admissibility of evidence of other crimes, wrongs, or acts to establish intent and an absence of mistake or accident is well established, particularly in child abuse cases. In *United States v. Woods*, 484 F.2d 127 (4th Cir. 1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974), the defendant was convicted of the murder of her eight-month old foster son, Paul. The Government in that case introduced evidence of seven prior assaults on Paul, as well as evidence of assaults by the defendant on nine other foster children. On appeal, the Fourth Circuit affirmed the defendant's murder conviction, holding that evidence of other offenses may be received for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime, provided that the trial judge may exclude the evidence if its probative value is outweighed by a substantial danger of undue prejudice to the accused. In that case, the Fourth Circuit concluded that the relevance of the evidence of other offenses clearly outweighed its prejudicial effect. In this general setting, the Fourth Circuit opined as follows:

> We think also that when the crime is one of infanticide or child abuse, evidence of repeated incidents is especially relevant because it may be the only evidence to prove the crime. A child of the age of Paul and of the others about whom evidence was received is a helpless, defenseless unit of human life. Such a child is too young, if he survives, to relate the facts concerning the attempt on his life, and too young, if he does not survive, to have exerted enough resistance that the marks of his cause of death will survive him. Absent the fortuitous presence of an eyewitness, infanticide or child abuse by suffocation would largely go unpunished. *Id.* at 133.

In *United States v. Colvin*, 614 F.2d 44 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 802 (1980), the defendant was convicted of the second degree murder of her fourteen-month old daughter. At trial, the Government offered evidence of prior assaults by the defendant on her daughter. In affirming the conviction, the Fifth Circuit declared as follows:

> We find that the government offered sufficient proof linking the appellant to the prior injuries to meet the threshold test for admission of other crimes, wrongs, or acts under [*United States v.*] *Beechum* [582 F.2d 898 (5th Cir. 1978).] Evidence

of prior injuries showing a "pattern of abuse" was admitted to prove the malice aforethought required to support a conviction for second degree murder. The evidence was concededly critical in establishing intent. Finding that the extrinsic offense evidence was relevant to the issue of intent and that its probative value outweighed the danger of any prejudicial effect, we hold it admissible under Fed.R. Evid. 403, 404(b) (citations omitted). *Id.* at 45.

We deem *United States v. Brown*, 608 F.2d 551 (5th Cir. 1979), relied on by Harris, to be inapposite. There the Fifth Circuit reversed a conviction in a child abuse case on the ground that the prosecution had totally failed to show that the defendant was responsible for the prior assaults on the child. In our view, the evidence in the instant case, considered in its totality, permits the inference that it was the defendant, and not someone else, who battered his son on the other occasions.

Judgment affirmed.