UNITED STATES, Appellee,

v.

Specialist Five Mary C. MERRIWEATH-ER, 415–11–4811, United States Army, Appellant.

CM 446091.

U.S. Army Court of Military Review.

29 May 1986.

---

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC, and Captain Bernard P. Ingold, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Patrick M. Flachs, JAGC, and Captain Tarek Sawi, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

FELDER, Judge:

Appellant was tried by a general court-martial composed of officer members. Contrary to her plea, she was convicted, as charged, of intentionally inflicting grievous bodily harm upon her infant son. She was sentenced to a bad-conduct discharge, confinement at hard labor for 12 months, and reduction to the grade of Private E–1.

On 30 October 1983, appellant brought her two year and ten month old son to the emergency department of Madigan Army Medical Center. The child was unconscious and unresponsive to painful stimuli. He was in a poor state of physical hygiene. Some of his teeth were missing, and his body temperature was abnormally cold at 91 degrees Fahrenheit (normal body temperature is 98.6). Appellant was tearful and upset. The resident physician on duty observed fresh blood in both ear canals and a left hematoma (bloody swelling) under the scalp. Further examination revealed numerous old and recent bruises all over the child's body, as well as some well healed third degree burns on his buttocks, ankles and feet (but not the soles of the feet). There were also pink welt marks on the child's back. X-rays revealed a large skull fracture. A CAT (computer-assisted tomography) scan showed a week-old subdur-

al hemorrhage. (The dura is a thick membrane between the brain and the skull; a subdural hemorrhage is bleeding between the brain and the dura.) A more recent hemorrhage was located between the dura and the skull.

Appellant was the victim's sole parent. For the first sixteen months of his life, the child lived with his grandparents. However, since June of 1982 he was in appellant's sole custody. Appellant had shared her quarters with a boyfriend for a few months, but he was transferred overseas in March of 1983.

Several female acquaintances of appellant who either babysat for her or were frequent guests testified at trial. One of these witnesses, Mrs. J, resided in appellant's quarters from November 1982 until February 1983. During that time, she observed scars on the child's body and burns on the child's buttocks. On one occasion, the child became very upset when Mrs. J tried to put him in the bathtub. When Mrs. J asked how the child had been burned, appellant replied he had accidently knocked a pot of boiling water off the stove while playing in the kitchen with a broom. On another occasion, Mrs. J heard a loud slap and something hitting the hardwood floor. Entering the room, she saw the child lying flat on his face and heard appellant telling him to get up. When he pulled himself up, his face was bloody. Five minutes later, the front of his shirt was covered with blood. When asked what had happened, appellant explained that the child had fallen off the bed and hit his mouth. She indicated she would take him to the hospital after morning formation, but after her return, she refused to do so. Eventually Mrs. J moved out because, at least in her opinion, she had been asking too many questions about "some small incidents that had been happening".

Another witness, Mrs. W, an employee at the Fort Lewis Child Care Center, testified that the victim attended the center on a regular basis from November 1982 until July 1983. The child subsequently stayed at home with appellant while she was on quarters expecting another child. Mrs. W observed burns and bruises on the child's body every time she changed his diapers. She reported these injuries to her director. Although she did not believe the child to be accident prone, Mrs. W stated under cross-examination that the child did have accidents and injuries at the Child Care Center, and that she had completed at least one written accident report on the child.

According to the forensic pathologist who testified at trial, the head fracture required a great deal of force, equivalent to what would be expected if the child fell out of a second or third story window, or if someone picked him up by the feet and swung him into a wall. The pathologist also described numerous bruises he observed on the child's back. These bruises had a linear appearance, which he said suggested that a looped object such as a belt or an electrical cord was used to inflict them. There were also scars on the child's extremities and buttocks, incurred a year earlier. According to the pathologist, the scar patterns indicate that the child was forcibly held down in a tub of hot water. The burn injuries were intentional, not accidental, and were not the kind incurred by a child splashed by a falling pot of boiling water. During cross-examination by trial defense counsel, the pathologist agreed that the head fractures were not necessarily caused by the child being hit by another person. There could be many causes of this type of skull fracture, the pathologist continued, including involvement in a car accident.

Appellant contends on appeal that the military judge abused his discretion by permitting testimony concerning prior injuries suffered by her child. She argues that the evidence at trial did not establish that she was the one who inflicted these injuries and, alternatively, that the probative value of this evidence was substantially outweighed by its inherent prejudice.

█ If appellant is correct that there was no evidence indicating that she inflicted the prior injuries, the testimony concerning them would be irrelevant and preju-

dicial. *See United States v. Brown,* 608 F.2d 551, 555 (5th Cir.1979) ("extrinsic evidence may only be introduced if 'an offense was in fact committed and the defendant in fact committed it.' *United States v. Beechum,* [582 F.2d 898, 912 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) ]"). Nevertheless, the lack of direct evidence does not constitute a failure of proof. There was ample circumstantial evidence adduced at trial to permit the members to infer that it was appellant who committed the assaults on her child. *See United States v. Harris,* 661 F.2d 138 (10th Cir.1981).

In this case, the government established that appellant had sole custody of the child during the time the various injuries were inflicted and thus had the opportunity to inflict the injuries. There was no suggestion that the child ever received any serious injury while in the care of a babysitter or day care center, nor was any evidence presented which indicated that her live-in boyfriend had harmed the child. By process of elimination, the evidence established conclusively that appellant was the source of the prior injuries. *See United States v. White,* 19 M.J. 995, 996 (ACMR), *pet. granted,* 21 M.J. 146 (C.M.A.1985).

■ Appellant's contention that the uncharged misconduct evidence should not have been admitted is equally without merit. As she now concedes, appellant made no objection at trial to the introduction of this evidence. When an accused does not object to testimony which includes reference to her collateral misconduct, she is entitled to no relief on appeal unless admission of the evidence was plain error. Military Rule of Evidence 103; *United States v. Licavoli,* 604 F.2d 613, 623 (9th Cir. 1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). Before addressing whether the admission of this evidence was plain error, however, I shall discuss certain issues raised by the government's introduction of appellant's prior acts of misconduct. The government argues that this evidence is admissible under Military Rule of Evidence 404(b). This rule,

which is based on the corresponding Federal Rule of Evidence, provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When evidence of uncharged misconduct is offered under Military Rule of Evidence 404(b) to prove something other than the accused's propensity to commit crimes, it is analyzed through what is essentially a two-step process. First, the court must determine whether the evidence is relevant to an issue other than the accused's character. Second, the evidence must possess enough probative value that is not substantially outweighed by its undue prejudice. The first step applies the standard set forth in Military Rule of Evidence 401, which deems evidence relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The second step requires that the probity of the uncharged offense be balanced against its potential for unfair prejudice. *Beechum, supra,* 582 F.2d at 911.

It could be argued that trial counsel was permitted to introduce evidence of the earlier injuries to show absence of accident. In this case, trial defense counsel cross-examined both expert medical witnesses on causation. He succeeded in having one state that she could not say that the victim's head injuries had been intentionally inflicted and that the injuries could have been caused by accident. Trial defense counsel's cross-examination of the other medical witness resulted in that expert's admission that the child's injuries could have been caused by accident and were not necessarily inflicted by another person. I consider the elicitation of these answers to have raised the defense of accident, at least insofar as an accidental cause of the inju-

ries, whether or not it involved appellant, would have absolved her of guilt. Conversely, the sheer number of injuries suffered by the victim over a relatively short period of time would have led common persons to conclude that the charged injury was less likely to have been accidental, thus rebutting the inference of possible accident which arose from the testimony elicited by trial defense counsel during cross-examination. *See State v. Silva,* 153 Me. 89, 134 A.2d 628, 632 (1957); E. Imwinkelried, *Uncharged Misconduct Evidence* § 4:03 (1984). The problem with this approach, however, is the substantial risk of prejudice raised by the introduction of this evidence. As stated previously, it was clear beyond cavil that appellant was the one who inflicted the previous injuries. Thus, while establishing the absence of accident in this case, the government was concomitantly allowed to present evidence that appellant inflicted the prior injuries and was therefore the sort of person who would have committed the charged offense.

■ In this case, however, I do not find an abuse of discretion by the military judge in admitting the evidence for the simple reason that there was no specific defense objection which invoked that discretion. Thus, it must be determined whether the admission of this evidence amounted to plain error. It did not.

1. My conviction in this regard might be even stronger had there been a limiting instruction regarding the proper use of uncharged misconduct evidence. My examination of the record indicates, however, that trial defense counsel, upon inquiry by the military judge, affirmatively waived instruction on the uncharged misconduct evidence. No error attaches to such a waiver. *United States v. Wray,* 9 M.J. 361 (C.M.A.1980).

2. There are numerous cases involving allegations of child abuse where courts have admitted evidence of uncharged misconduct as being probative on the issue of absence of accident. *See e.g., United States v. Harris, supra,* 661 F.2d at 142 (murder case involving severe cranial and abdominal injuries to accused's eight-month old son; court permitted evidence of numerous fractures sustained by victim months before the fatal injuries and states "the admissibility of evidence of other crimes, wrongs, or acts to establish ... absence or mistake or accident is

■ Reversal for plain error will not be made unless it appears necessary to avoid a miscarriage of justice, to preserve the integrity or reputation of the judicial process, or to correct the denial of a fundamental right of the accused. *United States v. McGary,* 12 M.J. 760, 762 (A.C.M.R.1981); *United States v. Beaudion,* 11 M.J. 838, 840 (A.C.M.R.), *pet. denied,* 12 M.J. 181 (C.M.A.1981). It should be first noted that neither the presentation of this evidence nor the trial counsel's argument thereon appear to have been deliberate attempts to inflame the passions of the members. In addition, appellant was tried by a panel of officers, presumably individuals who were best qualified for court-martial duty because of their age, education, training, experience, length of service, and judicial temperament. *See* Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2). Because of the presence of these factors, I cannot conclude that the presence of uncharged misconduct evidence here caused the factfinding process to break down or that the members were led to decide this case based upon passion, not reason.[1]

■ Finally, as observed previously, this evidence had some probative value with respect to the absence of accident, a permissible use under Rule 404(b).[2] Thus,

well-established, especially in child abuse cases."); *Ashford v. State,* 603 P.2d 1162 (Okla. Crim.App.1979) (in case involving longstanding child abuse, evidence of the past injuries held admissible "to counter any claim that the latest injury happened through accident or simple negligence"); *Bludsworth v. State,* 98 Nev. 289, 646 P.2d 558 (1982) (admissibility of prior injuries "as independent, relevant, circumstantial evidence tending to show that the child was intentionally rather than accidently, injured on the day in question"); *but see Harvey v. State,* 604 P.2d 586 (Alaska 1979) (court flatly rejects notion that pattern of abuse is relevant for purposes other than propensity). Thus, while recognizing the fact-sensitive nature of these cases, I also note the relevance of evidence of prior injuries in cases involving insinuations of accidental causation. This well-established use of uncharged misconduct evidence makes me even more reluctant to reach out and hold that its use here amounted to plain error, especially in light of its admitted probative value.

even if the admission of this evidence was error, it did not cause a miscarriage of justice, impugn the integrity or reputation of the judicial process, or otherwise deprive appellant of a fundamental right. Therefore, the failure of the trial judge *sua sponte* to exclude the testimony did not rise to the level of plain error. *Licavoli, supra,* 604 F.2d at 623; Military Rule of Evidence 103(d).

Appellant's remaining assignments of error are without merit.

The findings of guilty and the sentence are affirmed.

NAUGHTON, Judge, concurring in result:

I agree with the result reached by Judge Felder, affirming the findings and sentence, but prefer to put my reasoning on a somewhat different footing. Under Military Rule of Evidence 103(a)(1), the lack of objection by trial defense counsel to the evidence of his client's prior acts of misconduct results in a failure to preserve that issue for appellate review. Nevertheless, Rule 103(d) provides that even if the error was not brought to the attention of the military judge, we may take notice of "plain errors that materially prejudice substantial rights." Even so, but for the divergent views of Senior Judge Wold and Judge Felder, I would not dwell on the questions of whether or how the military judge should have admitted the evidence of the prior assaults on appellant's infant son

for I am convinced that this evidence was properly admissible under Military Rules of Evidence 404(b) and 403.[1]

Under Rule 404(b), evidence of uncharged misconduct is admissible to prove, *inter alia,* intent or the absence of accident. This rule is not exclusionary, and allows admission of uncharged wrongs *unless* they are introduced solely to prove a defendant's criminal disposition. *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977); *see generally United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). There is also a requirement that "this evidence must be substantially similar and near in time to the offense charged, must be in issue, and must have more probative value than prejudicial impact." *United States v. McFayden-Snider,* 552 F.2d 1178, 1183 (6th Cir.1977) (quoting *United States v. Largent,* 545 F.2d 1039, 1043 (6th Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977)).[2]

The admissibility of evidence of other crimes, wrongs, or acts to establish intent and an absence of mistake or accident is well-established, particularily in child abuse cases. *United States v. Woods,* 484 F.2d 127 (4th Cir.1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974).[3] In *Woods* the defendant was convicted for the murder of her eight-month-old son. At trial the prosecution introduced evidence of

---

**1.** In light of my position concerning the admissibility of this evidence, I do not agree with Senior Judge Wold's proposition that trial defense counsel's failure to object has raised the question of ineffective representation. Even assuming an objection had been lodged, I am convinced that had the military judge considered the admissibility of this evidence on its merits, he would have admitted it. I would note in the case at bar, that the military judge must have weighed in his own mind the 404(b) and 403 issues associated with this evidence as he gave the trial defense counsel the opportunity to request an appropriate limiting instruction which the defense counsel rejected.

**2.** In *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984), a four-part test was employed by

the Seventh Circuit to analyze whether a trial court should have admitted evidence of a defendant's prior misconduct under Federal Rules of Evidence 404(b) and 403. There the Court of Appeals approved admission of evidence of uncharged misconduct if (1) the evidence is directed toward establishing a matter in issue other than propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* at 779.

**3.** *See also United States v. Harris,* 661 F.2d 138, 142 (10th Cir.1981).

the defendant's prior assaults on her son as well as her assaults against her nine other foster children. In holding that evidence of the prior injuries (*i.e.*, other crimes evidence under Rule 404(b)) was admissible, the court stated:

> We think also that when the crime is one of infanticide or child abuse, evidence of repeated incidents is especially relevant because it may be the only evidence to prove the crime. A child of the age of Paul and of the others about whom evidence was received is a helpless, defenseless unit of human life. Such a child is too young, if he survives, to relate the facts concerning the attempt on his life, and too young, if he does not survive, to have exerted enough resistance that the marks of his cause of death will have survived him. Absent the fortuitous presence of an eyewitness, infanticide or child abuse by suffocation would largely go unpunished.

*Id.* at 133 (citation omitted).

In the typical child abuse case, the child has been abused on more than one occasion. Indeed, the incident which results in an accused's charge of child abuse is "only one of a series of abuses against the child." Plaine, *Evidentiary Problems in Child Abuse Prosecutions*, 63 Geo.L.J. 257, 258 (1974). In addition, the child abuse incident occurs in the privacy of the home against an essentially non-verbal child, making the availability of direct evidence very rare. *Id.; see also People v. Henson*, 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973). Consequently, the government must prove its case, if at all, with circumstantial evidence amidst a background of a pattern of abuse. This has led courts to rule that "pattern of abuse" evidence is relevant to prove something other than the defendant's mere propensity to commit the crime charged, *i.e.*, such evidence is relevant in child abuse cases to prove intent or absence of accident. *See Woods, supra; see also United States v. Colvin*, 614 F.2d 44 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 802 (1980); *Ashford v. State*, 603 P.2d 1162 (Okla.Crim.App. 1979). This is a very rational approach in light of the nature of child abuse crimes and the necessity for using such evidence is apparent. Without the evidence, the members see only the one injury that gives rise to the charge of child abuse and could come to the probable conclusion that this injury was the result of accident. Conversely, with the evidence, the members can better determine whether the injury giving rise to the charge of child abuse was intentional rather than accidental.

The evidence of appellant's prior assaults on her son became admissible to show intent and lack of accident. The evidence was relevant, clear, and convincing. Also, there is a similarity and connection in this case between the prior acts and the offense charged, which is sufficient to allow admission of the evidence in question.[4] The prior assaults and the charged offense have in common their violent nature and the victim. I am not persuaded by Senior Judge Wold's reasoning that because blunt force was used in this instance, and appellant had not used such force when she placed her son in boiling water or whipped him with a cord in the preceding assaults, the prior acts are too dissimilar to be admissible.[5] The continuing pattern of appellant's physical

---

**4.** The degree of similarity required is dependent upon identification of the particular purpose for which the uncharged misconduct evidence is being offered. *See United States v. Brannan*, 18 M.J. 181, 185 (CMA 1984); *see also* Annot., 41 A.L.R.Fed. 497 (1979). The Navy-Marine Corps Court of Military Review has also recently held:

> Where extrinsic offenses are introduced to show intent the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent. "[T]he mere prior occurrence of an act similar in its gross features—i.e., the same

doer, and the same sort of act, but not necessarily the same mode of acting nor the same sufferer—may suffice for that purpose."

*United States v. Peterson*, 20 M.J. 806, 812 (N.M. C.M.R.1985) (citations and footnote omitted).

**5.** *Cf. United States v. Naranjo*, 710 F.2d 1465, 1467–68 (10th Cir.1983) (defendant's reasoning that, because a gun was used to kill his mother-in-law and he had not used a weapon other than his fists in preceeding attacks, the prior acts are too dissimilar to be admissible on the issue of intent, found to be unpersuasive).

abuse of her infant son occurred from approximately mid-1982 to July 1983, that is just four months before the charged offense. I believe such evidence was directly probative in establishing the specific intent required of appellant to commit the charged offense and an absence of accident.

Senior Judge Wold also asserts that since appellant was charged with inflicting traumatic injuries to her son's head, the evidence in question really does nothing to carry the government's legitimate burden with respect to intent. Senior Judge Wold goes on to suggest that the government's uncontroverted evidence about the nature of the victim's injuries and the degree of force required to inflict them took the element of intent out of contention in this case. No matter how attractive this suggestion may appear, the government is entitled to establish appellant's specific intent in order to prove the charged offense beyond a reasonable doubt. *See United States v. Weidman*, 572 F.2d 1199, 1202 (7th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Consequently, "[i]ntent is never merely a 'formal issue' when the defendant is charged with a specific intent crime." *United States v. Liefer*, 778 F.2d 1236, 1242 (7th Cir.1985); *United States v. Shackleford*, 738 F.2d 776, 781 (7th Cir.1984). In this case, the evidence of prior injuries was admitted to prove appellant's intent to inflict grievous bodily harm.[6] But this stated ground does not constitute the exclusive basis which could justify admission of the evidence. Criminal intent is the most expansive identified exception to Rule 404(b) and often overlaps with another identified exception, absence of accident.[7] Although accident usually appears as an affirmative defense, in this case it was necessary for the government to prove the absence of accident as part of its prima facie case in order prove appellant's criminal intent.[8] Having only circumstantial evidence at its disposal, the government met its burden through medical testimony establishing that from the nature and frequency of their occurrence, the earlier injuries were not derived from an accidental cause, but were intentionally inflicted. *Cf. United States v. Peterson*, 20 M.J. 806, 812–13 (N.M.C.M.R. 1985). Thus, the evidence of prior injuries in this case was relevant to issues other than the appellant's propensity to commit the charged offense.

Of course, even if relevant, evidence may be excluded if the danger of unfair prejudice arising from its admission is substantially greater than its tendency to prove a disputed issue. Mil.R.Evid. 403. "This additional requirement for admissibility precludes admission of relevant evidence which would tend to *'unduly'* prejudice an accused under the circumstances of a particular case." *United States v. Owens*, 21 M.J. 117, 124 (C.M.A.1985) (citing *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984)). Ordinarily, the trial judge performs this balancing function when ruling on an objection to the admission of such evidence as he would any other involving Rule 403 issues and his determination will not be reversed on appeal absent an abuse of discretion. In applying the 403 balancing test, it is essential that the military judge measure the probative value of the contested evidence in light of the purposes for which is purports to be offered, and the need for that evidence in view of the contested issues and the other

---

6. Prior to the presentation of the Government's case-in-chief, trial defense counsel in his opening argument stated: "The government will try to prove and must prove that she [appellant] assaulted him, that she intended to do so, and she specifically meant to harm him, and, in fact, harm did happen." In his closing argument on findings, trial defense counsel stressed: "The key element that the military judge will instruct you all on later is intent."

7. "Criminal intent has been defined 'as that state of mind which negates accident, inadvertance or causality.'" 2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 404[12] (1982).

8. The offense of which appellant stands convicted requires as an essential element, a specific intent to inflict grievous bodily harm. Article 128(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 928(b)(2) (1982).

evidence available to the government on those issues. *See United States v. Beechum, supra,* 582 F.2d at 916–17. In the instant case, appellant's cross-examination of the government pathologist clearly tried to establish that the injury appellant was charged with inflicting could have been accidental. Indeed, the witness agreed to this point. Thus, without any further evidence, the members may well have concluded that this injury was accidental. Nevertheless, testimony concerning the nature and sheer number of injuries, evidence of the most telling nature, was available to counter this conclusion. "As these abnormal results are multiplied, instance upon instance, the likelihood of accidental causation diminishes to the vanishing point." *State v. Silva,* 153 Me. 89, 134 A.2d 628, 632 (1957). This concept, known as the doctrine of chances, is based on the notion that "ordinary common sense and mundane human experience [indicate that] it is unlikely that a large number of similar accidents will befall the same victim in a short period of time." E. Inwinkelried, *Uncharged Misconduct Evidence* § 4:03 (1984); *see also United States v. Danzey,* 594 F.2d 905, 912 (2d Cir.), *cert. denied sub nom. Gore v. United States,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1059 (1979).

This court has previously recognized the devastating impact evidence of prior misconduct can have on an accused mounting a defense against the charged offense. *See United States v. White,* 19 M.J. 995, 996 (A.C.M.R.), *pet. granted,* 21 M.J. 146 (C.M. A.1985). The risk of unfair prejudice is considerable and will often substantially outweigh any realistic probative force the uncharged misconduct might possess. "The evidence of these other injuries may well have been prejudicial in nature. A battered child is not a pretty picture." *United States v. Harris, supra,* 661 F.2d at 142. In my view, as in the cases cited,

the evidence in this case of the other injuries was highly probative in nature and was not rather collateral matter offered solely for prejudicial purposes, but was directed at the issues of whether the injuries to the victim could have happened by accident, and whether or not the appellant specifically intended to inflict them. I would hold, therefore, that under the facts of this case, had a timely objection been made, the military judge would not have abused his discretion in admitting the uncharged misconduct evidence.[9]

My conclusion that the evidence of prior injuries was admissible also resolves the issue regarding the sufficiency of the evidence in favor of the government. Appellant's remaining assignments of error are without merit.

Accordingly, I would affirm the findings of guilty and the sentence.

WOLD, Senior Judge, dissenting:

In this case, the prosecution was allowed, without objection, to introduce evidence that previous to the assault with which she was charged, appellant had intentionally burned her baby son by immersing him in scalding water and had repeatedly subjected him to brutal beatings, including whippings with a looped belt or electrical cord. My brothers conclude that this evidence was admissible to prove intent and non-accident, or at least was sufficiently close to being admissible to justify invocation of the waiver doctrine. I am convinced that the members convicted appellant simply because they believed she was a bad person who had a propensity for abusing her child. I am equally convinced that this came about as the result of inadequate representation by appellant's trial defense counsel, whose failure to object permitted the introduction of evidence of uncharged misconduct which should have been excluded under Military Rules of Evidence 404 and 403.

---

9. A reviewing court will also "look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1977).

*See also United States v. Dennis,* 625 F.2d 782 (8th Cir.1980); *United States v. Teeter,* 12 M.J. 716, 725 (A.C.M.R.1981), *aff'd in part and rev'd in part,* 16 M.J. 68 (CMA 1983); *United States v. Weaver,* 1 M.J. 111 (C.M.A.1975); *United States v. Thomas,* 19 CMR 218 (CMA 1955).

I am also convinced that the admission of that evidence was plain error.[1]

## I. ADMISSIBILITY

Military Rule of Evidence 404(b), which is based on the corresponding Federal Rule of Evidence, provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under this rule, evidence of uncharged misconduct may not be used solely to demonstrate the defendant's bad character. Even though such evidence would logically be relevant to show guilt in cases like the one at hand, since persons of violent tendencies are more likely to commit assaults than persons of more peaceable nature,[2] ·the rule prohibits such evidence because of its tendency to create unfair prejudice. Thus, unless uncharged misconduct evidence can be used to prove something other than "the character of an accused in order to show that the accused acted in conformity therewith," such evidence is categorically inadmissable.

As noted by my brother Felder, evidence of uncharged misconduct which is offered to prove something other than the accused's propensity to commit crimes is analyzed in two steps, first for relevance to an issue other than the accused's character and then by balancing its probative value against its prejudicial effect. Under Military Rule of Evidence 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Military Rule of Evidence 403 requires that "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403."[3] *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The government argues, and my brother Naughton agrees, that the evidence in question was admissible to prove intent to inflict grievous bodily harm. Of course the government had the burden of proving all the elements of the offense beyond reasonable doubt, including the element that the perpetrator intended to inflict grievous bodily harm. It must be remembered, however, that appellant was charged with inflicting traumatic injuries to her son's head. That being the case, the evidence in question really does nothing to carry the government's legitimate burden with respect to intent. Evidence that the perpetrator had previously whipped or scalded the victim would have no tendency to prove that he or she understood and therefore intended the effects of trauma on an infant's head. If one were conducting research on the effects of dropping a child on its head from a great height, one would hardly be expected to begin by boiling the child and observing the resulting blisters.

Even if the evidence of prior misconduct had been relevant to prove intent, it would have had no discernable probative value for that purpose in the case at bar. It was clearly established that whoever injured the victim did so by administering force to the infant's head which was equivalent to dropping him from a second or third story window or picking him up by the ankles and smashing him into a wall. Obviously, any sane human being knows that the use of such massive force against an infant's

---

1. I agree that the evidence clearly tied the prior misconduct to appellant, satisfying *United States v. Janis,* 1 M.J. 395 (CMA 1976). This fact reinforces my conclusions regarding the harm done by the admission of this evidence and counsel's failure to object.

2. Clinical studies indicate that the best predictor of future violence is past violence. *See* Monahan, Predicting Violent Behavior: An Assessment of Clinical Techniques 92, 104 (1981).

3. *I.e.,* the evidence must not create undue confusion, delay, or waste of time.

head will inevitably result in grievous bodily harm. As a practical matter, the government's uncontroverted evidence about the nature of the victim's injuries and the degree of force required to inflict them took the element of intent out of contention in this case. This, coupled with the highly prejudicial nature of the evidence (discussed below), means that Rule 403, if invoked, would prohibit reception of the evidence if offered to prove intent.

In my view, the only manner in which the evidence of previous whipping and scalding tended to show an an intent to inflict harm during the incident for which appellant was on trial was by showing that appellant had a trait of character which had led her to inflict serious harm on her child in the past. This is categorically prohibited by Rule 404(b).

Nevertheless, my brother Naughton concludes that the evidence was admissible to show absence of accident, since the trial defense counsel cross-examined the government's medical witnesses and elicited testimony that the victim's injuries could have been caused by accident and were not necessarily inflicted by another person. It has been argued by some that the sheer number of injuries suffered by a child during a relatively short period can show that it is less likely that a charged injury was accidental than if it had been the only injury. *See State v. Silva*, 153 Me. 89, 134 A.2d 628, 632 (1957); E. Imwinkelried, *Uncharged Misconduct Evidence* § 4:03 (1984).[4] The problem with this arguement when applied to the case at bar, however, is that it does not address the risk of prejudice created by the introduction of the evidence in question. As noted above, it was clear that appellant was the one who had inflicted the previous injuries. The preju-

dicial effect of evidence that appellant had committed such appalling attacks on her child can scarcely be overestimated. Consider, for example, the emotions which are aroused merely by reading the sterile summary of that evidence in the lead opinion. I find the capacity of such evidence to stir the passions of the members to be simply enormous and do not believe that it can rationally be discounted. Thus, in my view, any probative value with respect to an issue of accident pales in comparison to the prejudicial effect this evidence must have had, and this is clear to me even though the rule is that in weighing the possible prejudice against the evidence's probative value, the balance should normally be struck in favor of admission. *United States v. Teeter*, 12 M.J. 716, 725 (A.C.M.R. 1981), *aff'd in part and rev'd in part*, 16 M.J. 68 (C.M.A.1983).

I am likewise unpersuaded by the argument that the evidence was admissible to prove the identity of the victim's assailant. True it is that the evidence is powerfully persuasive that it was appellant who crushed her child's skull. The problem is that this effect is achieved only in the way which Rule 404(b) categorically forbids, *i.e.*, by showing that appellant acted in conformity with an evil character. Evidence which truly showed an identifiable *modus operandi* would have legitimate probative value to show identity. This might, in a given case, counterbalance its prejudicial effect. *Cf. United States v. White*, 19 M.J. 995 (A.C.M.R.), *pet. granted*, 21 M.J. 146 (C.M.A.1985). Here, there is nothing about the means or nature of the previous attacks which tends to identify appellant as the person responsible for the assault charged at trial; once again, whipping and

---

**4.** While the basic premise from which this theory proceeds is logical enough, it seems to me that its proponents load it with more weight than it can carry. Notwithstanding my disagreement with most applications of this theory and particularly with its application to the case at bar, I will observe that evidence of frequent injuries would seem to have much the same degree of value for rebutting accident no matter who was the cause. Thus it would appear that

in order to qualify for admission to show nonaccident (assuming that they are admissible at all) such injuries need not be shown to have been inflicted by the accused. Of course, if there were evidence that such injuries were inflicted by the accused, the government would have to meet the "plain, clear, and conclusive" standard or fall afoul of the rule adopted in *United States v. Janis, supra*, 1 M.J. at 397 (CMA 1976).

scalding are obviously dissimilar to blunt-force attacks.

Had an objection been lodged at trial to the introduction of this evidence, the conclusions just stated would compel a holding that the military judge abused his discretion by admitting it. But there was no defense objection, so we are led to the interlocking issues of whether the admission of this evidence amounted to plain error and whether appellant's defense counsel adequately represented her.

## II. PLAIN ERROR

Plain error exists only when reversal is necessary in order to avoid a miscarriage of justice, preserve the integrity or reputation of the judicial process, or correct the denial of a fundamental right of the accused. *United States v. Fisher*, 21 M.J. 327 (C.M.A.1986); *United States v. McGary*, 12 M.J. 760, 762 (A.C.M.R.1981); *United States v. Beaudion*, 11 M.J. 838, 840 (A.C.M.R.), *pet. denied*, 12 M.J. 181 (C.M.A.1981). I part company with my brother Felder on the application of these criteria to the case at bar. The absence of a *deliberate* attempt on the part of the trial counsel to inflame the members I view as a straw man; in my opinion, the evidence inevitably had that effect whether it was intended to or not. As for relying on the special qualifications of court-martial members, not only do I find the evidence in question fully capable of swaying the best-qualified court-martial member, but it seems to me that the adoption of that rationale would render Rule 404 a dead letter in military practice, and Rule 403 as well.

The government's case on identity was undeniably a weak one, yet the members necessarily found that appellant had inflicted the victim's injuries. The evidence of

appellant's evil character was extraordinarily powerful. I cannot escape the conclusion that the members identified appellant as the culprit simply because they had been persuaded that she was a bad person who had a propensity for abusing her child. *Cf. United States v. Cameron*, 21 M.J. 59 (C.M.A.1985). That is a miscarriage of justice.[5]

## III. ADEQUACY OF REPRESENTATION

Conflict of interest situations aside, inadequate representation of counsel consists of "a breach of professional competence coupled with a showing of a 'reasonable probability' of outcome-determinative prejudice." *United States v. Davis*, 20 M.J. 1015, 1018 (A.C.M.R.1985). This basic test, derived from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *United States v. Jefferson*, 13 M.J. 1 (CMA 1982), and *United States v. Rivas*, 3 M.J. 282 (CMA 1977), includes the principle announced in *Rivas* that "where inaction occurs at a critical point where action is compelled by the situation ... then the accused has been denied [effective assistance of counsel]." *Id.* at 289.

There can be no serious doubt that the introduction of the horrifying evidence of previous abuse admitted in the case at bar was a "critical point" in appellant's trial. Neither, it seems to me, can there be any serious suggestion that appellant's counsel was pursuing some trial tactic by declining to object, since an objection (or better still, a motion *in limine*) would have risked nothing and could well have gained an acquittal. As to prejudice, the weakness of the government's case on identity coupled with the powerfully inflammatory nature of the evidence, noted above, are more than sufficient to "undermine confidence in the

---

**5.** There is a disturbing tendency on the part of some courts to create expansive interpretations of evidentiary rules in child abuse cases in the name of necessity. While necessity is a legitimate and indeed a basic element in evidence theory, we cannot afford to lose sight of the other considerations which are essential to fairness and accurate results, such as avoidance of evidence which inflames rather than illumi-

nates. That is especially true in child abuse cases, which by their very nature tend to inflame the passions of those who hear them. I am especially wary of cases which simply announce the admissibility of pattern-of-abuse evidence without explicit analysis; merely saying a thing is so does not make it so. It seems to me that a large proportion of the cases relied upon by my brother Naughton fall into that category.

outcome" of appellant's trial. *See Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

I would set aside the findings of guilty and the sentence and authorize a rehearing.